In re Matthew J. PHILLIPS and Tina K. Phillips, Debtors.

No. 06–21242.

United States Bankruptcy Court, W.D. New York.

March 1, 2007.

---

by a motor vehicle financer should address whether it requests a hearing on negative equity or retail value.

6. The position and principal arguments asserted by Bank of America were addressed in *Peaslee*.

Bonnie S. Baker, Deily, Mooney & Glastetter, LLP, Albany, NY, for Creditor.

George M. Reiber, Rochester, NY, trustee.

Carl J. Schwartz, Jr., Penn Yan, NY, for Debtors.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On July 18, 2006, Matthew J. and Tina K. Phillips (the "Debtors") filed a petition initiating a Chapter 13 case, and George M. Reiber, Esq. (the "Trustee") was appointed as their Chapter 13 Trustee.

The Debtors filed a Chapter 13 Plan (the "Plan") which provided, pursuant to that portion of Section 1325(a)(9) that has become known as the "Hanging Paragraph, that the claim of American Honda Financial Corporation" ("American Honda"), secured by a 2005 Honda Odyssey (the "Odyssey"), was to be treated as an allowed secured claim in the amount of $33,269.00. This amount represented the amount the Debtors believed was due on the "Retail Installment Contract" they entered into when they purchased the Odyssey. The Plan further provided that the allowed secured claim of $33,269.00 was to be paid with interest, in equal monthly installments through the Plan.[1]

On August 24, 2006, the Trustee filed a Motion, which was amended on August 29, 2006, (the "Valuation Motion") which requested that the Court, pursuant to Section 506(a)(1), determine that American Honda had an allowed secured claim for the $27,425.00 August NADA Guide retail value of the Odyssey and an unsecured claim for the balance of the American Honda Secured Claim. The Valuation Motion asserted that: (1) the Debtors purchased the Odyssey on March 17, 2005 for their personal use from Ontario Honda ("Ontario Honda"), which was within 910 days of the filing of their petition; (2) in connection with their purchase, they traded in a 2002 Chrysler Plymouth Voyager (the "Voyager"), which was valued at $17,000.00 on the Retail Installment Contract[2]; (3) at

---

1. On September 1, 2006, American Honda filed a secured claim (the "American Honda Secured Claim") in the amount of $33,500.00.

2. The Retail Installment Contract was later assigned to American Honda.

the time they traded in the Voyager, it was subject to a lien in favor of Chrysler Financial that was owed in excess of $16,500.00; (4) the March 2005 NADA Guide indicated that the Voyager had a trade-in value of $8,425.00; (5) the Retail Installment Contract indicated that the purchase price for the Odyssey was $37,010.00, even though the July 2005 NADA Guide indicated that the manufacturer's suggested retail price for a new Odyssey was $30,295.00; [3] (6) the combination of the marked-up trade-in allowance for the Voyager and the marked-up sale price for the used Odyssey indicated that the Debtors had substantial negative equity in the Voyager that was refinanced as one of the transactions evidenced by the Retail Installment Contract so that the amount due to Chrysler Financial could be paid and a lien release obtained; (7) although the Retail Installment Contract granted the holder a security interest in the Odyssey for the entire amount financed, because the American Honda Secured Claim included rolled-in and refinanced debt, American Honda did not have a purchase money security interest for that portion of the debt, and, therefore, for all of the debt included in the American Honda Secured Claim, as specifically required by the Section 1325(a)(9) Hanging Paragraph; and (8) because American Honda had a purchase money security interest for only a portion and not all of the debt included in the American Honda Secured Claim, the exception set forth in the Section 1325(a)(9) Hanging Paragraph did not apply, and the American Honda Secured Claim was subject to the cram-down and bifurcation provisions of Section 506(a)(1).[4]

On September 8, 2006, American Honda filed Opposition to the Valuation Motion.

The Trustee filed similar valuation motions in other Chapter 13 cases involving secured claims filed by a number of other motor vehicle financers (these creditors, along with American Honda, will be referred to collectively as the "Motor Vehicle Finance Group").[5]

The Court conducted hearings on September 13, 2006 and November 15, 2006 at which time it heard the oral arguments of the Trustee and attorneys for a number of the Motor Vehicle Finance Group, including the attorneys for American Honda.

---

3. On or about September 8, 2006, the Trustee filed a copy of the window sticker for the Odyssey showing a total vehicle price of $31,010.00, including a $515.00 destination charge.

4. Section 506 provides, in part, that:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the pro-

posed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (2006).

5. The Trustee initially filed objections to confirmation in the cases where he believed that because of the roll-in and refinance of negative equity, the Section 1325(a)(9) Hanging Paragraph did not apply, even though the respective debtor's plan provided for treatment of the secured claim under the Section 1325(a)(9) Hanging Paragraph. It was at the Court's suggestion that the Trustee filed the valuation motions in order to insure that the respective members of the Motor Vehicle Finance Group received clear and detailed notice of the Trustee's position and so the motions could then be set down for consolidated oral arguments.

On December 22, 2006, the Court issued a Decision & Order in *In re Peaslee*, 358 B.R. 545 (Bankr.W.D.N.Y.2006) (*"Peaslee"*). In *Peaslee*, a copy of which is attached, the Court found that Section 506(a)(1), rather than the Section 1325(a)(9) Hanging Paragraph, governs the treatment of the secured claim of a motor vehicle financer, even though the debtor has purchased a replacement motor vehicle within 910 days of the filing of their petition for personal use, where: (1) it is shown that the secured claim includes amounts loaned to the debtor to pay off the debtor's negative equity in a trade-in vehicle, not to pay any part of the actual purchase price of the replacement vehicle, so that not all of the debt included in the secured claim is secured by a purchase money security interest; and (2) the Court, on all of the facts and circumstances presented in these refinancing of negative equity cases, in the exercise of its discretion, as specifically provided for by Section 9–103(h) of the New York Uniform Commercial Code, determined that a transformation rather than a dual status rule would be in the best interests of all of the parties and the Bankruptcy System.

On January 10, 2007, the Court issued a Decision & Order in *In re Jackson*, 358 B.R. 560 (Bankr.W.D.N.Y.2007) (*"Jackson"*). In *Jackson*, a copy of which is attached, the Court found that: (1) where the applicable retail installment contract did not itself indicate that negative equity had been refinanced, any interested party objecting to a motor vehicle financer's secured claim receiving treatment under that Section 1325(a)(9) Hanging

Paragraph had the initial burden to demonstrate that the secured claim included debt that was not secured by a purchase money security interest; (2) the objecting party could utilize the appropriate NADA Guide value to meet their initial burden of proof as to the trade-in value of a trade-in vehicle, the retail value of a used replacement vehicle, or manufacturer's suggested retail price of a new replacement vehicle; (3) notwithstanding a determination by the Court that an interested party using NADA Guide values may have met their initial burden of proof to demonstrate the refinancing of negative equity, so that a motor vehicle financer's secured claim included debt that was not secured by a purchase money security interest, the motor vehicle financer always retained the right to demonstrate that in fact no negative equity in the trade-in vehicle was refinanced and to request a hearing for the Court to make that determination; and (4) in the event that the Court determined that the allowed secured claim of a motor vehicle financer was to be treated under Section 506(a)(1), the motor vehicle financer always retained the right to dispute any alleged retail value for the vehicle in question, and to request a hearing for the Court to determine the actual retail value.[6]

### DISCUSSION

In this case, this Court finds that the Trustee has met his initial burden of proof to demonstrate to the Court's satisfaction that the two separate financial transactions evidenced by the applicable Retail Installment Contract included the separate trans-

---

**6.** These findings, numbered (3) and (4), were primarily to address the Court's determinations in the ten other cases it had on reserve when *Peaslee* and *Jackson* were decided, in-

cluding this case. *Jackson* also indicated that in the future these refinancing of negative equity cases would be addressed in connection with objections to confirmation when any response by a motor vehicle financer should address whether it requests a hearing on negative equity or retail value.

action where Ontario Honda loaned the Debtors money to refinance the negative equity they had in the Voyager for the following reasons:

1. Ontario Honda gave the Debtors a $17,000.00 allowance for the Voyager, even though the NADA Guide trade-in value for the Voyager was only $8,425.00;

2. Even though the $17,000.00 allowance for the Voyager may have been within the range of the values that resulted in the NADA Guide trade-in value of $8,425.00, although that seems unlikely, the Debtors paid more than $37,000.00 for the Odyssey replacement vehicle that had a manufacturer's suggested retail price of approximately $30,295.00 and a sticker price of $31,010.00; and

3. The overall price paid by the Debtors for the Odyssey indicates that they in fact had significant negative equity in the Voyager.

## CONCLUSION

Subject to the right of American Honda to request a hearing by March 12, 2007 on the issues of whether negative equity was refinanced or to determine the retail value of the Odyssey, for the reasons set forth in *Peaslee*[7] and *Jackson,* pursuant to Section 506(a)(1), American Honda shall have an allowed secured claim of $27,425.00, reduced by any payments received in the Phillips Case, to be paid in equal monthly payments together with the applicable *Till* rate of interest, to be set forth in the Confirmation Order presented to the

Court by the Trustee, and an unsecured claim for $5,844.00.

**IT IS SO ORDERED.**

---

7. The position and principal arguments asserted by American Honda were addressed in *Peaslee.*